Good morning counsel. Good morning your honors. Timothy Scott may please the court on behalf of the appellant Mark Gelazela. Mr. Gelazela was granted a bond pending appeal and he's joining us in the courtroom here today. Your honors we're asking that this trial conviction be reversed because even if we accept the government's evidence at face value the offense that they alleged was a matter of law outside of the five-year statute of limitations in this case and as such it should have been time barred. That error manifested itself and actually compounded upon itself in three different ways based on the district court's ruling. Let me just ask you about that assertion because our case law says that if the scheme as divide includes lulling then that lulling is part of the scheme it's not completed until the lulling is over and the the lulling emails were the wire fraud in this case or the the charged wires correct? Well I think there's two answers to that. The first is that to say that the emails were the offense I think. Well they know the emails weren't the offense but the the offense requires the use of the wires for some essential element and the wires issue in this case were the August 2010 emails correct? That's true your honor yeah the August emails were the ones that were alleged as the wires. I think factually it's important that those were not the first instances of wires that were sent. Certainly wires went back and forth by email on countless occasions before that. The reason that it does because if we're the offense then that element of the offense was met far far earlier. But the fact that the elements of the offense may have been met earlier doesn't mean that the government has to stop charging when an offense has been committed. If as Judge Ikuda says the government alleges and the jury is instructed that the lulling emails are part of the scheme is originally devised. Doesn't our case law make that very clear that lulling emails can be charged as part of a mail or wire fraud scheme? The answer to that the answer to the second question is yes lulling emails can certainly be charged. The answer to the first question though or the first assertion that just because the elements are met does that matter and I hope I'm not misstating what the court said but to paraphrase it does matter very much if the elements are met and the reason for that is that in a statute of limitations context once all of the elements of the offense are met that's when the clock starts. Now I don't quarrel with the notion that the government can continue to charge whichever wires they see fit as the offense but the limitation on that is that that has to be within the statute of limitations. You can't have a scheme that continues say for six or seven years. Well I hypothetically you could but the Ninth Circuit has held squarely that wire fraud is not a continuing offense. That's not a continuing offense. That's a single scheme which is what the statute identifies as being the offense and if the scheme can include lulling emails then I don't think it matters at what point the lulling emails stopped and that it's after the last lulling email that the scheme is completed. So that was the government's theory and I don't see why that's wrong if you can you can help explain. Sure so let me try to address the lulling aspect of it. The main case as I understand it that the government in the district court relied upon is the Tonki case. I think I'm saying that right T-A-N-K-E. Importantly I think Tonki was not a statute of limitations case. Tonki was a statute of limitations and it addressed whether the element of wire wire fraud or the wiring component of it can be met by some allegedly lulling email after the fact and the answer was sometimes essentially. And in Lane we also said that lulling emails as long as they were part of the scheme as originally devised is part of the offense. Well and so that that's a key modifier the scheme is originally devised. That's what they allege. That's what the government alleged in the indictment. What? And what the jury had to find I assume. Well I don't think either certainly the jury wasn't instructed the scheme as originally devised and I think what compounded that in terms of jury instructions is that the jury was also at liberty to convict not simply or merely on lulling but also if it was to facilitate the concealment of the scheme. But the jury was specifically instructed wasn't this instruction number six that the wire communication must have been sent prior to the scheme's completion and in deciding whether the scheme was completed you're to consider the scope of the scheme as it was originally devised as it was devised by the participants. So doesn't that the fact that the jury found that beyond a reasonable doubt doesn't that answer your your objections? No for two reasons. In the first is that it doesn't say originally devised. It doesn't have to be originally right so you've said the scheme can change over time. That's not a problem. The only thing that we've ruled out is three years later and I think it was Lazarenko case three years later there's there's efforts to conceal it so it doesn't have to be originally devised. It can evolve as it's ongoing but it nature of lulling or what this court has recognized as lulling is important. In the it's not the Saunders case but the the case that the that Tonki relied upon where there was the exchange of property and then a letter was sent out to say you've now acquired this property and and you know here's the deed or worse to that effect. That was devised as part of the scheme specifically to provide evidence and assurance in the course of the scheme as it was conceived of by the defendants. But counsel here the the charged allegedly lulling emails were the money's coming. You're getting your money back. Isn't that like an archetypal or archetypical lulling communication just keep waiting just do a couple of things and the money is coming? Not on the facts of this case. The the timeline of this case was that all of the money that was acquired was in about a three-month period between November of 2009 and March of 2010. Importantly and I think a key distinguishing fact from any of the lulling cases that we're familiar with is that the SEC was investigating deposed the defendant who within a week of being deposed by the SEC sent an email to all the defendants. The SEC is investigating this matter and to be fair they didn't say you know we're they caught us we're guilty or anything like that but they said look there appears to be you know some sort of a witch hunt I think is the words that were described so we're shutting the program down. Now I think that that's a key distinguishing fact because that is a lot different than saying you know the money's coming this is all part of the scheme. I don't think by any reasonable measure in any reasonable jury could have found that the scheme either as devised or as it evolved included let's have the SEC investigate shut down the program entirely and then three months later and I think importantly in response to an email from investors to say look we're you know we are trying to get the money back it's going to come back tomorrow because important and I'm sorry I don't want to interrupt. No, no, no, but it's like just sign this thing saying we didn't do anything wrong we're not criminals and you'll get your money back. That's what the wires essentially said. Right and money back was never the scheme even if you take the government's evidence at face value the scheme was you know to return untold returns on investment. As an evidentiary matter as a factual matter there is no evidence that this was in fact either designed to be lulling or part of a scheme either as it originated or as it evolved at some point. Mr. Galazella of course testified to the contrary that's the defendant's evidence but even the government's evidence the the one witness who was on the inside that they called was a Mr. Haglund was a was a alleged co-conspirator and he explicitly testified on cross-examination that that the emails that were sent were in direct response to to this other co-conspirators assurance that the money was in fact coming. So just as a factual matter there is no support for the government to assert that this was in fact a lulling email. I see that we've got about 30 seconds left what I would I guess what I would finish with is this if this is at all a close case and we would argue that we're on the other side of it being a close case but if this is an equipose if it's anywhere close to equipose the Supreme Court has taught us in the 2C case and its progeny that statutes of repose need to be liberally interpreted in favor of the defendant and so in this case and I wish I would have had the opportunity to address the the response to the note but that didn't occur here and so with that I see my time has expired. Thank you counsel. Good morning your honors I may have pleased the court Daniel on for the which is the defendant doesn't contest the sufficiency of the evidence and I think that's a tacit concession that the evidence before the jury was more than sufficient to return a verdict of guilty on the lulling counts. This court I think has seized on the fundamental defects with the appeal that my friend has raised and without belaboring the point I think I would just submit on the Here's not. Thank you. Thank you your honor. Thank you to both counsel the case just argued is submitted for decision by the court.
judges: Rawlinson, Ikuta, Bennett